## Case No. 1,899.

BRITISH CONSUL v. THOMPSON et al.

[Bee, 141.][1]

District Court, D. South Carolina. May 31, 1799.

PRIZE—RIGHT TO PROPERTY OF THE CAPTORS ON RECAPTURED VESSEL BY THE OWNERS.

1. An American brig was captured by three British privateers, and sent to Nassau. One of the privateers previously put on board of her sundry valuable goods, to be carried to Nassau. The brig was retaken by her own people, and brought in here. British captain libelled for his goods; but it being proved that there was no ground for capture, the owners of the brig recovered damages out of the goods, and the rest were adjudged to be restored.

[Cited in Manro v. Almeida, 10 Wheat. (23 U. S.) 487.]

[2. Cited in New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 436, to the point that it is proper to prosecute in admiralty for marine torts in personam as well as in rem.]

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

BEE, District Judge. The brig Abigail, commanded by defendant, [John L.] Thompson, and bound from the Havanna to Campeachy was captured on the high seas on the 28th April last by three British privateers, on suspicion of having enemies' property on board, and ordered to Nassau. Two prize-masters and six men were put on board the brig; and the master, owner, and one seaman remained in her. The other six of her crew were distributed among the three privateers. Before they parted, Miller, who commanded one of the privateers, sent on board the Abigail various articles of merchandize, to a considerable amount, to be carried to Nassau. On the 2d May, the master, owner, and seaman of the Abigail recovered possession of her, and on the 8th brought her into this port.

The libel charges that the said goods are the property of said Miller, and other British subjects, and that restitution of them to the libellant, on behalf of the owners, has been refused. He, therefore, prays that this court will decree restitution, with costs and damages for injury done to the same. Thompson admits that a quantity of goods were put on board and brought into this port, but disclaims all right to the same. Hamilton, the part owner, on behalf of himself and the other owners, also admits the putting on board of goods to a large amount, and his seizure of them; and prays that they may be condemned and sold to make compensation for the injury and damage sustained by the owners of the brig in consequence of her being unjustly seized and detained, and her voyage defeated.

The libellants insist that by 17th article of the treaty between the United States and Great Britain, the privateers had a right to detain the Abigail on suspicion of having on board the property of enemies; and to send her into the nearest British port for adjudication. That this court cannot go into a discussion of the question whether these grounds were just or not, as that leads to the question of prize or not, determinable solely in the courts of the captors. That if the party has sustained damage, he should have applied to those tribunals; but that by the recapture they have relinquished their right to do so. That the claimant has admitted Miller's property in the goods, and that they made no part of the cargo of the brig when captured; of course he has no right to them, and they must be restored. That the trading from one Spanish port to another was prima facie evidence, sufficient to justify the seizure and detention.

For the claimant it was contended that where the court has jurisdiction in part, all incidental matters must be noticed. That the libellants have sought the aid of the court for restitution of this property, which leads to a full investigation of the business, and decision as to its consequences. That this was done in the cases of The Grand Sachem [Arnold v. Delcol, Case No. 556] and L'Esperanza [Coulter v. L'Esperanza, Id. 3,277], as well as in some others; and that the doctrine, establishing the right of the court to do so, is confirmed in the case of Le Caux v. Eden [2 Doug. 594]. That the 17th article of the treaty with Great Britain does not give a right of seizure without reasonable cause of suspicion. That this article was intended to restrict the right previously existing under the law of nations. That upon perusal of the ship's papers, the captors ought to have dismissed the vessel, and would have done so, but that they wished to send these goods to Nassau, without delaying their cruize; and to divide the seamen belonging to the Abigail among the privateers.

Several cases were produced on both sides; but as they have no relation to any existing treaty, they do not apply here.

The first point for my consideration is the authority of this court to retain this cause. Here is no contract expressed or implied between the person who put these goods on board of the Abigail, and the claimant. No freight is stipulated for, nor bill of lading signed. Nevertheless, it cannot be said that Hamilton's possession is either tortious or fraudulent. He was divested of his vessel and cargo by force, recovered them in the same way, and found these goods on board. As the transaction took place on the high seas, I must either retain the cause, or leave the party without remedy. On the other hand, if I take cognizance of the matter upon the principle of law that "where there is right there must be remedy," I can only do so on the pleadings and evidence before the court, which necessarily involve the question of prize. This difficulty occurred in the cases of The Grand Sachem, and L'Esperanza [supra], the first of which went up to the supreme court [Delcol v. Arnold, 3 Dall. (3 U. S.) 333], where the jurisdiction of this court, under the circumstances, was confirmed; though the right of search, and detention for adjudication under treaty (with France) was admitted. From the papers on board the Grand Sachem, and from evidence produced to the court, I decreed the seizure illegal, and gave damages for the consequent loss of vessel and cargo. In the case of L'Esperanza, the cargo alone was in question; that being fully proved to be American was restored to the owners, in conformity to the provisions of the treaty. In neither case could the courts of the captors have interfered, because the parties were never within their jurisdiction; and this is the case now. The parties are compelled to ask for relief here; but the court cannot give it partially. It must determine on the whole merits, or not at all.

"He that seeks equity, must do equity." The libellant asks restitution of his goods. The claimant pleads a right to retain them for compensation of damage unjustly sus-

tained. To shew that there was nothing on board liable to seizure, he produces his register, bills of lading, and manifest; and the libellant has not attempted to deny the validity of these papers, or the neutral character of the vessel and her cargo. It is in proof, also, that the defendant has suffered greatly by the seizure and detention of the brig; and he is certainly entitled to compensation. The case in Hopk. [U. S.] 95, is in many respects applicable to the present; and was affirmed on appeal.

The only point remaining relates to the quantum of damages, and in fixing these I have, as in former instances, been assisted by the opinion of three respectable merchants. Their report, a copy of which I have directed to be filed, states that 12,133 dollars 56 cents is a reasonable allowance to be made to the owners of the Abigail for the seizure and detention of their vessel. I decree, therefore, that so much of the goods belonging to the British captain be sold as will pay that sum, with costs of suit. And that the remainder be delivered to the libellant for the use of those entitled thereto.

NOTE [from original report]. The undersigned merchants of Charleston, who were requested, by the district judge for South Carolina, to ascertain what damages may have resulted to the owners of the brig Abigail in consequence of her voyage being frustrated by capture, declare that, in our opinion, the said owners ought to be paid the amount following, viz.:

| | |
|---|---:|
| Freight of said brig of 180 tons burthen, as per register..Dollars | 5400.00 |
| Detention from time of capture, say 28th April, to 1st June, 33 days, at forty dollars per day, customary West India demurrage ..................... | 1320.00 |
| Duties on 20 pipes of brandy, and 40 pieces of cambric, in consequence of their being relanded in America ..................... | 721.00 |
| Pilotage in and out, notarial papers, customhouse, and counsel fees...................... | 172.56 |
| Loss resulting from disappointment in not returning with a cargo of logwood from Campeachy, at least.............. | 4000.00 |
| Insurance of brig Abigail from home to Philadelphia, and wages of officers and crew........... | 520.00 |
| Dollars | 12,133.56 |

Signed            Nathaniel Russel,
                  Adam Gilchrist,
                  John Geyer.